195 P.2d 367

**GUILES v. KELLAR, Sheriff, et al.**

No. 7387.

Supreme Court of Idaho.

June 24, 1948.

See also 68 Idaho 249, 192 P.2d 853.

Bandelin & Bandelin, of Sandpoint, and W. F. McNaughton and H. S. Sanderson, both of Coeur d'Alene, for appellant.

Whitla & Knudson, of Coeur d'Alene, and W. J. Nixon, of Bonners Ferry, for respondents.

GIVENS, Chief Justice.

Respondent, Howard Cooper Corporation, owner of a used tractor and bulldozer, sold them to appellant December 19, 1941, taking in payment therefor a promissory note for $1204.00 payable in installments of $400.00 on May 1, 1942 and $804.00 on October 1, 1942 with interest, secured by a chattel mortgage.

The equipment, prior to that time, had been leased and provisionally optioned to Boundary County at a monthly rental of $550.00. This contract had expired December 10, 1941, the County advising they were not going to exercise the option to purchase, but that they might desire to continue using the property to some extent and the property at the time of the sale to appellant was in the possession of the County. Thereafter, the further installments on the purchase price not being paid by appellant, respondent Howard Cooper Corporation instituted foreclosure proceedings of the chattel mortgage by notice and sale, appellant having taken possession of the machinery February 7, 1942. The present suit was instituted by appellant to stay the sale on the theory there was due from the County for the continued use of the machinery $1100.00, appellant offering to pay the difference and that respondent Howard Cooper Corporation was crediting him with only $180.00, the rental actually paid by the County.

At the conclusion of the trial, the County moved for judgment of nonsuit on the

402

ground and for the reason: "* * * that it appears from the evidence that there was no claim filed against Boundary County as provided for by law and provided by Section 30-2801; there was no verification of the claim as provided by Section 30-1105 (I.C.A.); in fact the evidence bears out my statement that there was nothing due from Boundary County. The exhibit letter from Howard Cooper Corporation shows that they were paid. They made no claim. And the plaintiff, Don Guiles testified he had no claim and at this time I submit that we should be dismissed." The motion was granted.

Notice of appeal was served on the County June 23, 1947. Respondent moved to dismiss the appeal because no copy of the Clerk's transcript or notice thereof was given to or served upon the County, in compliance with Section 11-215, I.C.A. Appellant sought augmentation of the record by having supplied through a certified copy a stipulation entered into November 10, 1947, some five months after the notice of appeal was served, signed by all the attorneys, including the attorney for the County, authorizing a settlement of the reporter's transcript. Since this was a part of the original files below, such motion for augmentation is granted. Newby v. City of St. Anthony, 48 Idaho 608, 284 P. 1028; Eldridge v. Payette-Boise W. U. Ass'n, 50 Idaho 347, 296 P. 1022; Bedford v. Gem Irr. Dist., 51 Idaho 105, 4 P.2d 366.

Respondent makes no claim or pretense it was in any way prejudiced or hampered in the preparation of its brief or the presentation of the case by appellant's failure to serve or give notice to the County of the Clerk's transcript, which includes the reporter's transcript, and while earlier decisions might justify the dismissal under such circumstances, the later opinions under the present rule stress this Court's discretion and that in the absence of prejudice, an appeal should not be dismissed for reasons as urged herein. Clayton v. Barnes, 52 Idaho 418 at 422, 16 P.2d 1056; Idaho Gold Dredging Corp. v. Boise Payette Lbr. Co., 54 Idaho 270 at 276, 30 P.2d 1076. Respondent's motion to dismiss is, therefore, denied.

Appellant contends the Howard Cooper Corporation, as mortgagee in possession, should have collected $1100.00 as rental for two full months, the time the machinery was in the possession of the County, though the County only used the machinery ten days during such period, and appellant offered to pay the alleged difference of $104.00.

Three issues are thus presented; two of fact and one of law. First, what the agreement was between appellant, respondent and the County with regard to the rental payments after the sale; i. e. contract or quantum meruit. Second, whether the respondent actually was the mortgagee in possession and, third, its liability if it were the mortgagee in possession. The initial and controlling question is what the agreement, express or implied, was between ap-

pellant, respondent, and the County. The amended complaint in this regard alleged:

"That prior to the execution of said note the above described personal property had been leased to the said Boundary County, Idaho at a monthly rental of Five Hundred Fifty ($550.00) Dollars a month, and said County had an option to purchase the equipment said option providing that all rentals should apply on the purchase price should said County purchase the same."

"That thereafter the Howard Cooper Corporation offered to the plaintiff herein to sell the above described personal property providing the County did not exercise its option to purchase the same from Howard Cooper Corporation; and on December 19, 1941 the Howard Cooper Corporation represented to the plaintiff, Don Guiles, that the said Boundary County did not intend to exercise its option, and thereupon the above mentioned note and mortgage were given by the plaintiff herein, but the Howard Cooper Corporation represented to the plaintiff that the Boundary County desired to use said Machinery for a short time, and it was agreed by the plaintiff and the Howard Cooper Corporation that Boundary County should continue to retain possession of the machinery, and that the rental price of the machine to be paid by Boundary County should apply on the purchase price."

The County admitted these allegations. Respondent's answer alleged:

"Answering paragraph 3, this defendant Howard Cooper Corporation further alleges and states that said machinery had been rented and at the time it was sold to the said Don Guiles, was in the possession of Boundary County, Idaho, under which they were to pay certain rental for said machinery provided it was used, all of. which was known to the said Don Guiles who made personal investigation thereof and secured full information as to the said rental and the condition and accepted the same machines subject thereto and it was further agreed at said time that whatever rental, if any, was paid to this defendant by said Boundary County should be credited upon the said note of the said Don Guiles and that thereafter said Boundary County made return to this defendant and reported to it that under the terms of its agreement there was due for the rental of said machines the sum of $180.00 and paid in said sum to this defendant and has, and still does refuse to pay any other, or additional sum and claims it did not use said machines and was not liable therefor, and that if there is any liability whatever existing said money should be paid either to the said Don Guiles or to his defendant to apply on his account and that said Boundary County, Idaho denies liability and that in order to have the liability determined it is necessary that said Boundary County be made a party to this action in order that the rights of all persons may be determined and settled in this action."

"Answering paragraph 4, this defendant admits said paragraph with the exception that after being advised that Boundary County was not going to exercise its option, the plaintiff thereupon made personal investigation of said facts and bought said property relying on his own investigation and the statements made to him by the officials of Boundary County, Idaho. That it was agreed that the rental price paid by Boundary County should apply on the purchase price and that such was done."

The evidence clearly shows that after the sale, the dozer was used by the County for only ten days and the $180.00 paid therefor was at the rate of $550.00 per month. Appellant testified he had no agreement with the County and made and filed no claim against or with the County for rentals. Mr. Barnes, respondent's agent who negotiated the sale, testified:

"Q. Mr. Barnes, at the time you entered into negotiations with Don Guiles for the purchase of this bulldozer isn't it a fact that you told Mr. Guiles that the county was using the equipment at a monthly rate of $550.00 per month and that the county payments would apply on his note and mortgage? A. After December 10th.

"Q. You know of your own knowledge that the county had possession of the bulldozer until February 7th or 8th, 1942? A. Yes sir.

＊　　＊　　＊　　＊　　＊

"Q. Did Mr. Guiles *no* it was in the possession—by the way when did the contract with the county expire? A. December 10, 1941.

"Q. You had no agreement for any use of the 'dozer after that? A. No.

"Q. Were you guaranteeing any payments for any time or just what the county paid? A. That is all, what the county paid us would apply one hundred per cent on his contract.

"Q. But there was nothing to be credited until you got it from the county? A. No.

"Q. And you did give credit for everything that came from the county? A. That is correct.

＊　　＊　　＊　　＊　　＊

"Q. Your agreement between Howard Cooper Corporation and Boundary County was that the county was to pay $550.00 per month rental for the machine during the time that they used it? A. That is correct.

"Q. Whether before December 10th or after that date? A. Well, the written agreement with the county run up to December 10th and they were to pay $550.00 a month and the date extends in any of our rental contracts from the time they take the machine until it is returned to us. That is on the regulation Howard Cooper Corporation rental form.

"Q. When the agreement was entered into with Mr. Guiles it was understood that the county still was using the equipment

and that the county rental would apply on the note and mortgage? A. That is correct."

There was other evidence with regard to payment of rent by the County and State and billings, etc. for the same—no doubt pertinent, but for analysis by the trial court. The pertinent finding was: "The court finds there (is) not sufficient evidence in the case to show that any further sum is due from Boundary County for the rental of said property and that no verified claim therefore as provided by statute has been made against Boundary County."

Thus, while the court did not specifically find what the contract was, the finding was as definitive as appellant's pleading and the evidence, which might not unreasonably be considered rather inconclusive.

There is thus in the record rather a deficiency of evidence than a conflict, but which the trial court resolved, and the state of the record justifies his finding and supports it and, therefore, is properly affirmable by us, but so limited. Since the trial court has thus found there was insufficient factual basis for holding the County was obligated to pay more than the amount they did pay, applicable upon the purchase price, it is unnecessary to consider the other two questions, because the maximum of respondent's responsibility to appellant, if it were a mortgagee in possession, was what the County was obligated to pay. Conaway v. Thomas, 101 Okl. 227, 224 P. 965.

Judgment is affirmed. Costs awarded to the respondent.

BUDGE, HOLDEN, MILLER, and HYATT, JJ., concur.