# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 42278

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2016 Unpublished Opinion No. 319 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: January 11, 2016 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| WILLIAM LEE COOK, III, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Teton County. Hon. Gregory W. Moeller, District Judge.

Judgment of conviction, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

William Lee Cook III appeals from his judgment of conviction for sexual abuse of a minor child under sixteen years of age. Cook alleges he was denied his right to due process and a fair trial when the district court allowed a statutorily unqualified juror to sit on the jury. He also argues the district court erred in excluding relevant DNA evidence and testimony. For the reasons set forth below, we affirm.

## I.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Cook was charged with sexual abuse of a minor after E.K. disclosed Cook touched her genitals and buttocks. E.K. reported that she stayed overnight at her aunt's home, and during the evening she went into Cook's room to play video games and watch television with him. E.K. fell asleep on Cook's bed; and when she awoke, Cook was touching her vagina and buttocks while he masturbated. E.K. was fourteen years of age at the time of the incident. Cook was convicted

1

of the offense following a jury trial. On appeal, he alleges the district court committed fundamental error during the jury selection process and abused its discretion in excluding relevant evidence.

During the jury selection process, a prospective juror informed the court she had moved away from Teton County after submitting her juror questionnaire. The juror informed the court she had lived in another county for "a couple months," and she intended to stay in that county, but she had not changed her vehicle registration, driver's license, or voter registration from Teton County to the new county. The juror told the court she was still a legal resident of Teton County. Neither attorney questioned the juror about her residence nor her ability to sit on a jury in Teton County, and neither sought to strike her from the panel for cause nor by use of a peremptory challenge. This juror was selected for the panel, and she remained on the jury throughout the trial and deliberations. Cook appeals the court's failure to remove this juror from the jury pool upon learning that she no longer lived in Teton County.

During the pretrial motion in limine heard the morning of trial, the State sought to preclude Cook from admitting evidence about forensic testing that was conducted on a pair of pajamas found in his home. During the investigation, E.K. informed investigators that semen would likely be found on a pair of pajama pants worn during the incident. Approximately one week after the incident, a pair of pajama pants was recovered from Cook's home. Cook resided with his mother and stepfather, and DNA samples were obtained from all three residents for purposes of DNA testing. An initial forensic test identified semen on the pants, but further DNA testing failed to identify the sample as containing DNA from E.K., Cook, or the other residents of the home. Prior to trial, Cook filed an exhibit list that included the report from the initial forensic testing and the DNA report, however, Cook did not disclose any witnesses qualified to testify about the content of the reports. The State sought to exclude the reports and any testimony about the reports, pursuant to Idaho Rules of Evidence 401, 402, 403, 602, 701, 702, and 901. Cook argued this evidence was relevant to support his theory of defense because the absence of his DNA on the pajama pants would contradict E.K.'s testimony. Cook conceded he had not disclosed an expert witness, but had intended to have one of the investigating law enforcement officers discuss the content of the reports. The district court granted the State's motion to exclude this evidence and any testimony regarding forensic testing, because Cook would not have expert testimony from a witness competent to testify about the forensic testing

and results. The district court further found that even if an expert witness was not required by I.R.E. 702, the evidence would not be relevant because it was neither inculpatory nor exculpatory, given the lack of forensic findings to link the pajamas to Cook, the victim, or the other residents of the home.

During trial, the prosecutor asked the investigating officer what investigatory steps he had taken, and unsolicited, the witness stated he had obtained DNA samples from Cook's family members. Following Cook's objection and argument outside the presence of the jury, the court determined it would not allow any testimony or evidence about the DNA testing. The parties consented to a limiting instruction, which informed the jury not to consider any testimony about DNA testing. Cook appeals the exclusion of the forensic reports and testimony that would have supported his theory of defense and discredited E.K.'s testimony.

## II.

## ANALYSIS

Cook raises two issues on appeal. The first issue is whether the district court committed fundamental error and violated his constitutional rights to due process and a fair trial by allowing a statutorily unqualified juror to sit on the jury. The second issue is whether the district court abused its discretion in excluding relevant DNA evidence.

### A. Statutorily Unqualified Juror

For the first time on appeal, Cook argues the district court committed fundamental error by failing to remove a statutorily unqualified juror from the jury panel. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Idaho decisional law, however, has long allowed appellate courts to consider a claim of error to which no objection was made below if the issue presented rises to the level of fundamental error. *See State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971). In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court held an appellate court should reverse an unobjected-to error when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978. Cook argues the inclusion of the statutorily unqualified juror on the jury panel violated his unwaived

3

constitutional rights to due process and a fair trial, and therefore, he has met the first prong of the *Perry* analysis.

The Sixth Amendment to the United States Constitution, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, requires "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . ." U.S. CONST. amend VI. Further, the Idaho Constitution establishes "the right of trial by jury shall remain inviolate." IDAHO CONST. art. I, § 7. Therefore, a defendant's constitutional rights are implicated where the defendant is denied impartial jurors. *State v. Moses*, 156 Idaho 855, 862, 332 P.3d 767, 774 (2014). Under the Sixth Amendment, the mere statutory disqualification of a juror, without more, does not affect the impartial nature of the juror. *See*, *e.g.*, *United States v. Silverman*, 449 F.2d 1341, 1344 (2d Cir. 1971). The United States Supreme Court has stated that in a case where a statutorily or otherwise unqualified juror sits as a juror in a case, the statutory or other type of disqualification alone is not enough to implicate constitutional rights. Instead, it is "only those reasons that affect a juror's impartiality [that] can truly be said to affect the fairness of a trial." *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556 (1984). In addition, the Ninth Circuit Court of Appeals has held the inclusion of a statutorily disqualified or unqualified juror on a panel will not result in a new trial absent a showing that the "juror's participation in the case results in 'actual bias' to one or more of the parties." *Coughlin v. Tailhook Ass'n*, 112 F.3d 1052, 1058-59 (9th Cir. 1997). *See also Bennett v. Lockhart*, 39 F.3d 848, 853 (8th Cir. 1994) ("it is incumbent upon the [aggrieved person] to clearly demonstrate that the juror's lack of qualifications presented actual bias or prejudice, affecting the juror's impartiality and [affecting] the fairness of the trial"). We hold a challenge to a jury verdict based on a statutorily disqualified or unqualified juror requires a showing that the juror acted with bias or prejudice and consequently, denied the defendant the guaranteed right to a fair trial and an impartial jury.

Here, the sole basis upon which Cook challenges the juror is the representations to the court that she no longer lived in Teton County. However, upon questioning, the juror also represented that all indicators of her residence (vehicle registration, driver's license, and voter registration) had not changed from Teton County. *See* Idaho Code § 2-206(1). Even if we deem this juror to be statutorily disqualified on the basis of residence, there are no facts in the record

4

before us to indicate this juror was not impartial, or that her inclusion on the jury panel impacted the impartiality of the other jurors. Cook has failed to show how the inclusion of this juror on the jury panel violated his constitutional rights to due process and a fair trial. Because Cook has not met the first prong of the *Perry* analysis we will not address his arguments as to the other prongs of the analysis, and Cook is not entitled to relief under the fundamental error doctrine.

**B.    DNA Evidence**

At issue here is whether the district court abused its discretion in excluding the forensic testing reports and testimony about the absence of Cook's DNA on the pajama pants. The district court excluded the evidence because Cook could not lay an adequate foundation, and the evidence was not relevant. We consider each of these findings in turn.

**1.    Lack of foundation**

The decision whether to admit evidence at trial is generally within the province of the trial court. A trial court's determination that evidence is supported by a proper foundation is reviewed for an abuse of discretion. *State v. Gilpin*, 132 Idaho 643, 646, 977 P.2d 905, 908 (Ct. App. 1999). Therefore, a trial court's determination as to the admission of evidence at trial will only be reversed where there has been an abuse of that discretion. *State v. Zimmerman*, 121 Idaho 971, 973-74, 829 P.2d 861, 863-64 (1992). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

Idaho Rule of Evidence 702 governs the admission of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Expert testimony is generally admissible if evidence is beyond the common experience of most jurors and the jurors would be assisted by such testimony. *State v. Hester*, 114 Idaho 688, 694, 760 P.2d 27, 33 (1988). We have held the admission of DNA evidence in a rape case is governed by I.R.E. 702, and we see no reason why that decision would not apply to a case involving allegations of sexual abuse of a minor in which DNA evidence is at issue. *See State v.*

*Amerson*, 129 Idaho 395, 402, 925 P.2d 399, 406 (Ct. App. 1996). *See also State v. Burrow*, 142 Idaho 328, 331, 127 P.3d 231, 234 (Ct. App. 2005) (Proper foundation is required to show that an expert witness employed an accurate and reliable methodology to arrive at a complex scientific, medical, or technical opinion such as a scientific opinion about the statistical reliability of a DNA match.).

We first consider the district court's decision to exclude the forensic reports. Cook's pretrial filings included his witness list which listed only two witnesses--Cook and his mother. His exhibit list included the two forensic testing reports and an evidence receipt form. Because Cook failed to disclose a witness that would be competent to testify about the content of the forensic testing reports, such as the Idaho State Police forensic scientists who conducted the tests, the State sought to exclude the forensic reports because Cook would be unable to lay the proper foundation necessary for the admission of the reports. Cook failed to take advantage of the opportunity to make an offer of proof to support his argument that the investigating officer would be a competent witness to admit the content of the reports, and he failed to provide authority to support his argument that the DNA evidence was admissible without an expert witness.

The district court did not err in excluding the forensic reports because Cook failed to lay a proper foundation for the admission of the reports. The district court noted the defense had the opportunity to subpoena the proper witnesses and to establish the competence of the officers as experts, but did not take the necessary steps to lay a proper foundation for the admission of the reports or the content of the reports. The district court properly determined I.R.E. 702 would require the use of an expert witness for the admission of the DNA evidence, and the evidence would be excluded in the absence of an expert witness to lay the proper foundation.

### 2. Relevance

The district court also excluded the forensic reports as irrelevant and during trial extended the ruling to include testimony about DNA testing after a State's witness mentioned DNA samples were taken from Cook, his mother, and stepfather. Evidence that is relevant to a material and disputed issue concerning the crime charged is generally admissible. *State v. Stevens*, 146 Idaho 139, 143, 191 P.3d 217, 221 (2008). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401;

*Stevens*, 146 Idaho at 143, 191 P.3d at 221. Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010). We review questions of relevance de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993); *State v. Aguilar*, 154 Idaho 201, 203, 296 P.3d 407, 409 (Ct. App. 2012).

Cook argues he was prejudiced by the exclusion of the evidence because he was entitled to present his theory of defense and to use evidence that tended to rebut E.K.'s testimony about the incident. However, the district court found the reports were irrelevant because the forensic analysis failed to identify E.K., Cook, or the other residents of the home as the source of the DNA found on the pajama pants, and therefore, the evidence had no probative value to the proceedings. The district court found the lack of DNA matching either Cook's or the other residents' was not proof of anything because there were too many factors that could explain the lack of a DNA match. The court's ruling also excluded any testimony on this issue by the State's witnesses.

The district court did not err in excluding the evidence on the basis of relevance. The court properly identified relevant evidence as that which tends to prove or disprove a fact of consequence in the case, and here the evidence would not tend to prove or disprove a fact of consequence in the case. The lack of DNA evidence was not relevant to Cook's guilt or innocence because there were too many unknown factors that might have contributed to the lack of a DNA match, not the least of which was any testimony establishing that these were the pajama pants worn during the incident. The district court properly considered the I.R.E. 403 balancing test and found there was no probative value in the admission of the DNA evidence, including the lack of a DNA match between the pants and Cook. The court also properly determined Cook would not be prejudiced by the exclusion of the DNA evidence. The district court did not abuse its discretion in excluding the DNA evidence as irrelevant given the facts and circumstances in the record.

## III.

## CONCLUSION

For the reasons set forth above, we affirm Cook's judgment of conviction for sexual abuse of a minor child. Cook is not entitled to relief under the *Perry* analysis because he has failed to show a violation of his constitutional rights to due process and a fair trial in the absence

of a showing the juror was not impartial.  Further, the district court did not err in excluding DNA evidence because Cook was unable to lay a proper foundation for the admission of the evidence, and the evidence was not relevant because it would not tend to make a fact of consequence-- Cook's innocence or E.K.'s credibility--more or less probable.

Chief Judge MELANSON and Judge GUTIERREZ **CONCUR**.